United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

J.L.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY, et al.,

Defendants.

Case No. 25-cv-07378-PCP

**ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION**

Re: Dkt. Nos. 13, 15

Pursuant to 42 U.S.C. § 405(g), plaintiff J.L. seeks judicial review of the Commissioner of Social Security's decision denying her application for disability insurance benefits under Title II of the Social Security Act.[1] Plaintiff asks the Court to reverse the Commissioner's decision and remand for an award of benefits or, in the alternative, for further administrative proceedings. For the following reasons, the Court reverses and remands for further proceedings.

**BACKGROUND**

Plaintiff protectively filed an application for disability insurance benefits on August 31, 2021. The Commissioner denied plaintiff's application initially and on reconsideration. Plaintiff then requested, and was granted, a hearing before an administrative law judge. The ALJ took testimony from plaintiff and a vocational expert. The ALJ subsequently rendered a decision denying plaintiff's application on July 26, 2024, which became the final order of the Commissioner after plaintiff's request for review by the Appeals Council was denied. The ALJ's decision is therefore the final decision subject to this Court's review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

United States District Court
Northern District of California

In the opinion, the ALJ first noted that plaintiff alleged an onset date of March 21, 2019. The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920.[2]

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date.

At step two, the ALJ found that plaintiff "has the following severe impairments: right lateral epicondylitis, right wrist tendinitis, degenerative disc disease of the cervical spine, history of invasive ductal carcinoma of left breast status post-surgery and radiation, unspecified anxiety disorder, and depressive disorder."

At step three, the ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." The ALJ "specifically considered listing 1.18" (abnormality of a major joint in any extremity) and determined that the available evidence did not show that plaintiff satisfied the specified criteria for that listing. The ALJ also found that

---

[2] The five steps of the inquiry are:

> 1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. See 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. See 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. See 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. See 20 C.F.R. §§ 404.1520(e), 416.920(e).
>
> 5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. See 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 [depressive, bipolar, and related disorders] and 12.06 [anxiety and obsessive-compulsive disorders]." To reach that determination, the ALJ considered whether the "paragraph B" criteria of each listed impairment were met. To satisfy the "paragraph B" criteria, a claimant's mental impairments must result in one extreme limitation or two marked limitations in one of four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. The ALJ determined that plaintiff's mental impairments did not meet the paragraph B criteria because she had no limitation in adapting or managing herself; only a mild limitation in understanding, remembering, or applying information; and moderate limitations in the other two categories. The ALJ also found that the "paragraph C" criteria of listing sections 12.04 and 12.06 were not satisfied.

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity or] RFC." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with certain modifications. To reach this determination, the ALJ assessed the evidence in the administrative record to consider whether an underlying medically determinable impairment could reasonably be expected to produce plaintiff's symptoms and then evaluated the extent to which the intensity, persistence, and limiting effects of plaintiff's symptoms limit her work-related activities.

At steps four, the ALJ determined that plaintiff "ha[d] past relevant work as a receptionist and security guard" but was no longer able "to perform [this] work as actually or generally performed."

At step five, the ALJ considered plaintiff's age, education, work experience, and residual functional capacity and found plaintiff capable of performing jobs that exist in significant numbers

in the national economy, such as marker, power screw driver operator, and routing clerk. The ALJ thus concluded that plaintiff was not disabled from March 21, 2019 through the date of her order, July 26, 2024.

## LEGAL STANDARD

On review, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court can set aside a denial of benefits only if it is not supported by substantial evidence or based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation modified).

## ANALYSIS

### I. Substantial evidence supports the ALJ's step-three finding.

Plaintiff argues that the ALJ erred at step three of the sequential analysis by failing to expressly consider whether plaintiff's impairments met the criteria for the listing 13.10, which covers breast cancer. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, ¶ 13.10.[3] The listing explains that,

[3] The parties identify the relevant listing as 13.00G.2.b. But that provision does not identify a separate listing—it simply explains how the Commissioner "consider[s] the effects of anticancer therapy" in evaluating whether an individual meets one of the listings for a specific cancer. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, ¶ 13.00(G).



United States District Court
Northern District of California

in "evaluat[ing] cancer under th[is] listing[]," the Commissioner "will consider … [d]uration, frequency, and response to anticancer therapy," among other factors. *Id.* ¶ 13.00(B)(3). "[B]ecause [such] therapy and its toxicity may vary widely," the Commissioner "consider[s] each case on an individual basis," looking to evidence of "complications or adverse effects of therapy, such as … [c]ontinuing gastrointestinal symptoms," "persistent weakness," "neurological complications," "cardiovascular complications," and "reactive mental disorders." *Id.* ¶ 13.00(G)(2)(a)–(b). But the listing notes that "in many cases, cancers meet listing criteria only if the therapy is not effective and the cancer persists, progresses, or recurs." *Id.* ¶ 13.00(G)(1).

Plaintiff contends that the ALJ's failure to mention the listing for breast cancer is reversible error. But "[t]here is no requirement for an ALJ to cite every [l]isting that the claimant's impairments may meet or were considered." *Ma v. Berryhill*, No. 17-CV-05696-RS, 2019 WL 1090389, at *3 (N.D. Cal. Mar. 8, 2019); *see also T.M. v. Kijakazi*, No. 20-CV-05164-NC, 2021 WL 6882389, at *3 (N.D. Cal. Aug. 2, 2021) (The "ALJ is not required to perform a detailed analysis for every possible listing." (quoting *Abreu v. Astrue*, 303 Fed. Appx. 556, 557 (9th Cir. 2008))). To be sure, the "ALJ must review relevant evidence" when considering whether a claimant meets a listing, *Ma*, 2019 WL 1090389, at *3, and substantial evidence must support the ALJ's finding that a claimant did not meet any listing, *Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ satisfied those requirements here. The ALJ's decision identified the symptoms that plaintiff contends show her continuing complications of anticancer therapy, including pain in the vicinity of her lumpectomy, tightness and mobility restrictions in her right shoulder, anxiety, depression, and fatigue. But the ALJ's decision also correctly noted that the record contained countervailing evidence. For example, plaintiff's shoulder stiffness had, according to treatment notes, not impeded her ability to sit comfortably, get up and down, or walk without assistive devices, and plaintiff maintained full strength, intact sensation and reflexes, and full range of motion in her right arm and shoulder. Treatment notes from plaintiff's mental-status examinations described plaintiff, who was receiving psychotropic medication for her anxiety and depression, as alert and oriented, with a normal mood and affect. Most notably, imaging of plaintiff's breast in both 2019 and 2020 found no abnormalities and reported benign findings,

suggesting that the therapy had been effective and that plaintiff's cancer was not persisting or recurring. The listing, however, notes that "in many cases, cancers meet listing criteria only if the therapy is not effective and the cancer persists, progresses, or recurs." *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, ¶ 13.00(G)(1) (explaining that many cancers will not meet listing criteria under such circumstances). The ALJ expressly identified all of this evidence, which is at least reasonably adequate to support the conclusion that plaintiff did not meet the criteria for listing 13.10. The ALJ's step-three finding is therefore supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("Substantial evidence is more than a mere scintilla but less than a preponderance" (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))). While plaintiff may interpret the evidence differently, such an alternative interpretation of the record is an insufficient ground for reversal. *See Bryan T. v. Dudek*, 799 F. Supp. 3d 943, 956 (N.D. Cal. 2025).

**II. The ALJ erred in evaluating the medical opinion evidence.**

Plaintiff argues that the ALJ erred in her assessment of the medical opinion evidence. An ALJ "must consider all medical opinion evidence." *Tommasetti*, 533 F.3d at 1041. Where there are ambiguities or conflicts in the medical evidence, the ALJ is responsible for resolving them. *Id.*; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ "must articulate how persuasive [she] finds all of the medical opinions from each doctor or other source, and explain how [she] considered the supportability and consistency factors in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citation modified); *see* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor is "the extent to which a medical source supports the medical opinion by explaining the 'relevant objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)) (citation modified). The consistency factor is "the extent to which a medical opinion is 'consistent with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (citation modified) (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ may, but need not, consider other factors, such as "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists." *Id.*

United States District Court
Northern District of California

Plaintiff argues that the ALJ erred by (1) failing to incorporate the findings of Dr. Herman Sandhu into her RFC finding; (2) rejecting as unpersuasive the findings of Dr. Lawrence Enweze; and (3) failing to adequately explain her rejection of the findings of Dr. S. Amon. The first two arguments fail, but the Court agrees that the ALJ erred in failing to explain her rejection of certain of Dr. Amon's opinions.

**A. The ALJ's RFC finding did not conflict with Dr. Sandhu's opinions.**

The ALJ found Dr. Sandhu's opinions persuasive and supported. Plaintiff contends that, despite this finding. the ALJ "did not include in the RFC most of the limitations Dr. Sandhu assessed." Not so—the ALJ's RFC finding reflects (or exceeds) the limitations identified by Dr. Sandhu. For example, plaintiff insists that the ALJ's finding that plaintiff was "precluded from work involving complex and detailed tasks" but "remain[ed] capable of work involving simple, repetitive tasks and instructions" is at odds with Dr. Sandhu's evaluation. But Dr. Sandhu opined that plaintiff had "no limitations" in either her "ability to understand, remember, and perform simple/repetitive tasks" *or* her "ability to understand, remember, and perform complex/detailed written and oral instructions." That is, the ALJ took a more restrictive view of plaintiff's capacity for performing complex and detailed tasks than Dr. Sandhu. Plaintiff also asserts that the ALJ's finding that plaintiff's RFC allows for "no more than occasional contact with the general public," without mention of her capacity for contact with other employees, conflicts with Dr. Sandhu's opinion that plaintiff has "moderate limitations in [her] capacity to interact appropriately with others including co-workers, supervisors, *and* the public." But Dr. Sandhu defined the term "moderate" to indicate a "more than [] slight" but less than "serious" limitation, with which an "individual is still able to function satisfactorily." So in his view, plaintiff was "still able to function satisfactorily" in interacting with others and had no "serious" limitation in this area. The ALJ's finding that plaintiff required limited contact with the public (i.e., strangers), but could continue interacting regularly with co-workers and supervisors (i.e., individuals familiar to her), does not conflict with Dr. Sandhu's opinion. *See Rosales v. Colvin*, No. 14-CV-770, 2015 WL 391794, at *6 (C.D. Cal. Jan. 28, 2015) (explaining that even a claimant whose "moderate social limitation" required "no public contact" was still capable of "frequent contact with co-workers");

*Javier v. Kijakazi*, No. 21-CV-00191, 2022 WL 3275674, at *10 (D. Haw. Aug. 11, 2022) (same). And although plaintiff argues that the ALJ took a more expansive view than Dr. Sandhu of plaintiff's "ability to maintain concentration, attention, and persistence/consistency during a normal workday," Dr. Sandhu stated that plaintiff had only "mild limitations" in this area, i.e., that "[t]here is a slight limitation … but [plaintiff] can generally function well." Nothing in the ALJ's RFC finding conflicts with the view that plaintiff can generally concentrate and persist well.

**B. Substantial evidence supported the ALJ's finding that Dr. Enweze's opinions were unpersuasive.**

The ALJ found Dr. Enweze's opinions unpersuasive, including his statements that plaintiff was limited to occasionally lifting 10 pounds and had manipulative limitations that prevented her from more than occasionally reaching overhead, reaching forward, handling, fingering, or feeling. Substantial evidence supported that conclusion.

As to the supportability factor, the ALJ noted that "Dr. Enweze did not review the medical record" as a whole and instead based his opinions on "one examination on one particular day." Plaintiff argues that it was unreasonable to discount Dr. Enweze's opinions on this basis. To be certain, many medical sources base their opinions on a one-time examination, and that "is not, standing alone, a legitimate reason for rejecting [an] opinion." *Russell v. Berryhill*, No. 17-CV-1152, 2018 WL 2948560, at *2 (W.D. Wash. June 13, 2018) (quoting *Lopez v. Colvin*, 194 F. Supp. 3d 903, 917 (D. Ariz, July 11, 2016)). Still, the fact that a medical opinion is based on a one-time examination rather than the full medical record "is relevant," *id.* (quoting *Lopez*, 194 F. Supp. 3d at 917), as it necessarily means that medical source considered only a fraction of "the 'relevant objective medical evidence,'" which is the key consideration for supportability. *Woods*, 32 F.4th at 791–92; *see also Tracy F. v. O'Malley*, No. 22-CV-00233, 2024 WL 1701572, at *2 (D. Idaho Apr. 19, 2024) ("The supportability factor looks inward at the medical opinion's bases; the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be." (citation modified)). And given the existence of other medical opinions that were based on a review of plaintiff's entire medical record, the ALJ reasonably determined that

Dr. Enweze's report was less supportable by comparison.

As to the consistency factor, the ALJ explained that certain of Dr. Enweze's opinions as to plaintiff's limited range of motion were inconsistent with the evidence in the record that these limitations existed primarily on plaintiff's left side. Indeed, as the ALJ noted, plaintiff testified that any limitations in her right-side range of motion had not impacted her ability to perform her current job. And other medical sources whom the ALJ found persuasive opined only that plaintiff's left-side reaching was limited. The ALJ also reasoned that Dr. Enweze's opinions concerning plaintiff's postural restrictions were inconsistent with plaintiff's course of treatment, which, as the ALJ's decision elsewhere explains based on her review of the entire medical record, had been conservative in nature. It was reasonable for the ALJ to conclude "that a person with impairments as those assessed by Dr. [Enweze] would have sought more aggressive treatment and that this inconsistency was a reason for discounting Dr. [Enweze]'s opinion." *Bailey v. Colvin*, No. 15-CV-00932, 2016 WL 6471321, at *6 (C.D. Cal. Nov. 1, 2016). Plaintiff identifies other evidence in the record that might support Dr. Enweze's opinions, "[b]ut the possibility of reasonably reaching a different conclusion about persuasiveness does not make an ALJ's determination unsupported by substantial evidence and is not sufficient grounds for reversal. Substantial evidence is merely 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' not such relevant evidence as a reasonable mind would find permits no other conclusion." *Bryan T.*, 799 F. Supp. 3d at 956 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)).

### C. The ALJ failed to articulate her reasons for rejecting certain of Dr. Amon's opinions, despite deeming them "the most persuasive."

The ALJ found the medical opinions of Dr. Amon and Dr. E. Trias to be "the most persuasive." As relevant here, the opinions of Drs. Amon and Trias varied slightly as to the nature of the limitations on plaintiff's left-side mobility. Dr. Amon opined that plaintiff's reaching was "[l]imited" on the left side in the "[o]verhead" and "front and/or lateral[]" directions, such that plaintiff could only occasionally reach in these directions with her left arm. By contrast, Dr. Trias opined only that plaintiff's "[r]eaching" was "[l]imited" in the "[l]eft [o]verhead" direction, with

no stated limitation on her front or lateral reach. As Plaintiff argues, the ALJ's RFC finding appeared to adopt Dr. Trias's view that plaintiff could perform "no more than occasional left nondominant overhead reaching" but was not limited in her ability to reach in other directions. Yet the ALJ did not articulate her reasons for crediting Dr. Trias's opinion over Dr. Amon's. That was error. Where "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," an ALJ must "articulate how [she] considered the other most persuasive factors." 20 C.F.R. § 404.1520c(b)(3). The ALJ found the conflicting opinions of Drs. Amon and Trias to both be "the most persuasive"—i.e., the most supported and consistent with the record—so she was required but failed to provide the requisite explanation as to why the other relevant factors justified her adoption of the latter's opinion. And the ALJ's failure to do so was not harmless. Crediting Dr. Amon's opinion about plaintiff's limited capacity for frontward and lateral reaching would undercut the ALJ's conclusion that plaintiff could perform the three jobs identified at step five, each of which require "frequent reaching" according to the Department of Labor's Dictionary of Occupational Titles. *Cf. Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that an ALJ's erroneous failure to include limitations in the residual functional capacity assessment is harmless where the limitations do *not* preclude performance of the jobs identified at step five).

### III. The ALJ failed to provide clear and convincing reasons for rejecting plaintiff's subjective symptom testimony.

Plaintiff argues that the ALJ improperly discredited her testimony about the severity of her symptoms. The Court agrees.

An ALJ must engage in a two-step analysis to evaluate the credibility of a claimant's testimony regarding subjective symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation modified). "Second, if the claimant meets this first test, and there is no evidence of malingering,

'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Further, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding [subjective symptoms]." *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991). The ALJ may consider inconsistencies between a claimant's testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).

Here, plaintiff testified that she continues to suffer various symptoms resulting from her breast-cancer treatment, including worsening vision, frequent hot flashes, hives, anxiety, fatigue, and pain at the site of her lumpectomy surgery. As a result of these continuing symptoms, she stated that she was already "at [her] limit" in her part-time job, which required her to work 20 hours per week and allowed her to alternate between sitting, standing, and walking for roughly equal portions of each shift. Plaintiff also stated that, as a result both of her surgery and an on-the-job injury, she experiences pain in her arm and wrist, cannot raise her arms fully, and has difficulty reaching. And plaintiff testified that her heightened anxiety from her breast-cancer treatment and the ongoing risk of recurrence—for which she continued to take medication and was not medically cleared—precluded her from returning in any capacity to the intensive, interaction-heavy office job that she had held previously. Further, plaintiff testified that even working full-time at the non-office position she held at the time of the ALJ hearing would "overwhelm" her both physically and mentally due to her anxiety, fatigue, and mobility restrictions.

United States District Court
Northern District of California

The ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to cause the[se] alleged symptoms." But the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." The ALJ's analysis in reaching that second-step conclusion does not suffice to satisfy the "clear and convincing" standard.

First, the ALJ reasoned that plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms" was "greater than expected in light of the objective evidence of record"—namely, the medical evidence that plaintiff "received routine conservative treatment" for many of her impairments. As discussed above, substantial evidence may support the ALJ's conclusion that plaintiff received only conservative treatments suggestive of less severe symptoms. But that alone cannot satisfy the heightened bar for rejecting a claimant's own symptom testimony in the Ninth Circuit—the ALJ was required to identify specific symptoms alleged by plaintiff that would have necessitated more aggressive treatment than plaintiff received. *See Virginia M. v. Saul*, No. 18-CV-00621, 2019 WL 13071985, at *7 (C.D. Cal. Aug. 5, 2019) ("The ALJ did not specify which treatments in the record were conservative or routine, nor did he suggest any possible treatments that Plaintiff could have had but didn't receive. Such lack of specificity is not clear and convincing." (citation modified)); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("The ALJ must identify the testimony that was not credible, and specify what evidence undermines the claimant's complaints." (citation modified)). The ALJ's general reference to plaintiff's "statements about … her symptoms" do not identify the specific symptom allegations being rejected.

Second, the ALJ rejected plaintiff's testimony as to the severity of her anxiety because plaintiff "testified that she has been working part-time, 20 hours per week for eight months" and "testified that her anxiety does not affect her because this job is a different setting" from plaintiff's prior office job. That is not an accurate portrayal of plaintiff's statements. While plaintiff explained that her new job was more conducive to management of her severe anxiety than her pre-cancer position, plaintiff testified that she was "at [her] limit" even while working half-time in that

better environment. And plaintiff testified that that full-time work in her current position would still "overwhelm" her. There is no inconsistency between plaintiff's statement that she could barely manage her half-time position and her testimony that her anxiety precluded full-time work. Even if there were, the ALJ's reasoning would not account for plaintiff's testimony as to the persistent fatigue and drowsiness she has experienced since her cancer treatment, which would clearly impact plaintiff's ability to double her working hours.

Third, the ALJ rejected plaintiff's symptom testimony because plaintiff "has received limited mental health treatment and she has not received any medical treatment since 2023." But the fact that plaintiff did not receive medical treatment after 2023 cannot support the ALJ's rejection of symptom testimony concerning the period preceding 2023, and plaintiff alleged symptoms stretching back to her alleged onset date in 2019. *See Smith v. Kijakazi*, 14 F.4th 1108, 1116 (9th Cir. 2021) ("[T]he ALJ...erred by seeking only to reach a single disability determination for the entire multi-year period, thereby failing to consider whether Smith was disabled for only a qualifying, early portion of that time."). Further, as to plaintiff's limited mental health treatment, the Ninth Circuit has warned against disregarding evidence of a plaintiff's mental illness solely on the basis that the individual did not seek treatment because "millions of people … d[o] not seek treatment for a mental disorder" and have justifiable reasons for not doing so. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). The ALJ did not probe whether plaintiff had legitimate reasons for not seeking additional mental health treatment despite her allegations of severe impairment.

Finally, the ALJ stated that "the positive objective clinical and diagnostic findings since the amended alleged onset date detailed above do not support more restrictive functional limitations than those assessed herein." Again, such a general reference to "objective clinical and diagnostic findings" is insufficiently specific to pass muster under the "clear and convincing" standard, which required the ALJ to "state *specifically* …what facts in the record lead to th[e] conclusion" that plaintiff's symptom testimony was not credible. *Smolen*, 80 F.3d at 1284 (emphasis added).

United States District Court
Northern District of California

As a result of these errors in evaluation, the ALJ failed to show by "clear and convincing reasons" that the severity of plaintiff's alleged symptoms could be discounted.

**IV. The ALJ adequately considered the lay testimony of plaintiff's mother.**

Plaintiff argues that the ALJ erred by rejecting the lay testimony of plaintiff's mother, who completed a questionnaire describing plaintiff's physical and mental limitations. But as plaintiff concedes, the ALJ expressly acknowledged this lay testimony and summarized it in some detail, noting that plaintiff's mother "stated the [plaintiff] had limited range of motion on the left side of her body, fatigue, needs rest, gets sleepy, is forgetful and gets distracted easily" and "has difficulty with her memory[] and concentration." The ALJ explained that she had "considered the personal observations [of plaintiff's mother] in terms of how consistent those observations [we]re with the [plaintiff]'s statements about their symptoms as well as with all of the objective medical evidence in the file." And the ALJ further explained that, while she was not required to evaluate this lay testimony "using the same criteria as medical source statements," she had "considered [the observations] to complete the narrative of the [plaintiff]'s subjective complaints" in accordance with the applicable regulations.

Plaintiff contends that this explanation was inadequate because, although the ALJ summarized and noted her consideration of the testimony from plaintiff's mother, the ALJ did not provide germane reasons for discounting the testimony. But the ALJ was not required to do so. For claims filed on or after March 27, 2017, the applicable regulations provide that the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources …." 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Thus, although "[i]t is an open question whether ALJs are still required to consider lay witness evidence" at all, "it is clear they are no longer required to articulate it in their decisions." *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022) (emphasis added); *see also Kelley C. v. SSA Comm'r*, No. 24-CV-08055-TSH, 2025 WL 2917156, at *10 (N.D. Cal. Oct. 14, 2025). Here, the ALJ expressly indicated that she had considered the testimony of plaintiff's mother, and plaintiff provides no reason to doubt that the ALJ did so. That is all that was required.

**V. The Court need not address whether the ALJ erred a step-five.**

Finally, plaintiff argues that the ALJ's step-five finding as to her capacity for work was based on an improper hypothetical question posed to the vocational expert. The Court need not resolve this issue. Because this Court remands for further proceedings based on the ALJ's inadequate consideration of the medical opinion evidence and plaintiff's symptom testimony, the ALJ must reassess the medical evidence and make a new determination as to plaintiff's RFC. *See* Program Operations Manual System (POMS) GN 03106.036 Court Remand Orders, https://secure.ssa.gov/poms.nsf/lnx/0203106036 (last visited August 15, 2026) (a court order vacating a prior decision and remanding the case voids the prior decision and thus returns the case to the status of a pending claim). That will, as a result, necessitate reconsideration of the ALJ's finding at step five concerning plaintiff's ability to perform jobs that exist in significant numbers in the national economy. The Court therefore will not address the adequacy of the ALJ's existing step-five analysis at this time.

**VI. The Court remands this matter for further administrative proceedings.**

Plaintiff asks the Court to remand for an immediate award of benefits. But "[a]n automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *See Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017), as amended (Jan. 25, 2018). Such an automatic award is inappropriate if "there are outstanding issues that must be resolved before a [disability] determination can be made, or if further administrative proceedings would be useful[.]" *Id.* at 1047. Here, while the Court concludes that the ALJ failed to articulate her reasons for adopting the opinion of Dr. Trias over that of Dr. Amon, and did not provide clear and convincing reasons for rejecting plaintiff's symptom testimony, it is possible that the ALJ may provide sufficient reasons on remand. And even if the Court were to credit Dr. Amon's opinion and plaintiff's testimony, outstanding issues would remain concerning plaintiff's ability to perform jobs that exist in significant numbers in the national economy, necessitating a remand for further administrative proceedings.

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court orders that this matter be REVERSED AND REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated: August 17, 2026

P. Casey Pitts
United States District Judge